**In re JR. FOOD MART OF ARKANSAS, INC.**

**Bankruptcy No. 90–50419S.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

Aug. 24, 1992.

Evans Benton, Little Rock, Ark., for Lewis Lamb, William Rowe and William Lynn.

Susan Gordon Gunter, Little Rock, Ark., for Mosely Candy & Tobacco Co.

Charles Coleman, Little Rock, Ark., for Coleman Dairy.

Martha Jett McAlister, Little Rock, Ark., for Unsecured Creditors Committee.

Allen Bird, Little Rock, Ark., for debtor.

## ORDER DENYING REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSES

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Request for Payment of Administrative Expenses filed by Lewis Lamb, William Rowe, and William Lynn ("claimants"), on December 18, 1991. The debtor operated several gasoline/service stations on property owned by the claimant. When the debtor vacated the premises, underground tanks apparently remained on the property. The claimants request payment of administrative expenses pursuant to 11 U.S.C. §§ 503(b)(1)(A), 507(a)(1), for costs of removing the underground petroleum storage tanks.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(B).

■■■ The parties have stipulated to the facts and submitted the matter upon briefs and the stipulation.[1] The stipulations are as follows:

"1. Lewis Lamb et al have a claim against Debtor in the sum of $23,348.35.

"2. This sum was expended to remove underground petroleum storage tanks on claimant's property.

"3. Debtor made filings with the Ark. Dept. of Pollution Control and Ecology listing itself as an owner of these tanks.

"4. Claimants leased the property upon which these tanks were located to JFM, Inc. which then subleased the property to the Debtor. The leases and subleases both expired on March 31, 1991.

"5. The underground tanks were removed by claimants on May 15, 1991. The tanks upon expiration of the leases ceased to be used for petroleum product storage.

"6. The rent under the lease between claimants and JFM, Inc. totalled $1,900.00 per month on all properties on which these tanks were located. All leases and subleases were executed pre petition."

■■■ These are the only facts presented to the Court.[2] Despite the fact that no exhibits were attached to the stipulation, the parties assume that the leases are before the Court. Neither party has indicated to the Court to which of the 550 docketed documents in the Court file the leases may be appended. The burden of proving an administrative expense priority is upon the claimants. *In re Englewood Community Hospital Corporation*, 117 B.R. 352, 358 (Bankr.N.D.Ill.1990). The Court will not search out their proof for them.

The claimants assert that they are entitled to payment of administrative expenses on the basis that funds expended by the claimants were "actual, necessary expenses of preserving the Debtor's Estate pursuant to 11 USC 503(b)(1)(A) and 11 USC 507(a)(1)." Specifically, the claimants assert that they removed the petroleum storage tanks because they were an environ-

---

**1.** Parties are bound by their stipulations. *O'Connor v. City & County of Denver*, 894 F.2d 1210, 1225 (10th Cir.1990); *Morelock v. NCR Corporation*, 586 F.2d 1096, 1107 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). Where parties submit matters on the written record, the parties have authorized the judge to decide the issues of material fact that exist, whether or not argued or even anticipated by the parties. *Boston Five Cents Savings Bank v. Department of Housing and Urban Development*, 768 F.2d 5, 11–12 (1st Cir.1985). This is distinguishable from the situation in which the parties submit the matter on

cross-motions for summary judgment. If cross-motions for summary judgment are filed, an issue of fact will require that the Court set the matter for trial in order to hear additional evidence. *Id.* In the case at bar, the parties have authorized the Court to decide the facts on the evidence they have submitted.

**2.** Arguments of counsel are not evidence. Accordingly, the Court has disregarded such facts stated in argument but not in the stipulation in deciding the issue presented.

mental hazard, requiring prompt remedial action. In their brief, the claimants also seek administrative priority for the reasonable rental value of their property during the time the tanks were being removed, after the debtor vacated the premises.

In order to obtain administrative priority, claimants must demonstrate that the claim is for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). The claimants fail in their proof because there is no showing that the costs of removing the storage tanks were necessary to preserve the estate. Further, there is no showing of a benefit to the estate.

In essence the facts before the Court are that, upon expiration of its lease, the debtor left petroleum tanks underground, which tanks the owner removed. There is no evidence before the Court that the tanks posed an environmental hazard or that further "clean-up" was required. While it is true that state and federal law may require "closure" of such tanks, see, e.g., 42 U.S.C. § 6991b(c)(5), removal is not necessarily the equivalent of closure. 40 C.F.R. § 280.-71(b). Indeed, there is no evidence before the Court that there was any environmental or other necessity for incurring the costs of removing the tanks from the ground. The only evidence before the Court is that the owners/claimants removed the tanks from the premises and incurred costs doing so. While the claimants may have a claim based upon breach of contract or some other theory, there is insufficient evidence before the Court to determine that the costs were either necessary or of benefit to the estate. This is particularly so where, as here, the debtor had vacated the premises.

■ Claimants discuss numerous cases which give administrative expense priority to environmental hazard claims. However, there is no evidence before the Court that any environmental hazard exists. While some environmental-hazard cases favor making clean-up costs an administrative expense based upon public safety policies, see, e.g., Wall Tube & Metal Products Company v. Tennessee, 831 F.2d 118 (6th Cir.1987), only those costs reasonably required to remove the threat to the public health and safety should be given administrative priority, see In re FCX, Inc., 96 B.R. 49, 55 (Bankr.E.D.N.C.1989). Inasmuch as there is no showing of an environmental hazard, or even that the debtor did not comply in its duty under environmental regulations to "close" the tanks, the claimants fail in their proof.

■ Apparently basing certain arguments upon the leases, both parties spend much time discussing the contractual duties of the debtor. However, there is no evidence before the Court regarding the contracts and the duties imposed upon the debtor thereunder. In any event, any breach of pre-bankruptcy contractual obligations of the debtor would not elevate a breach of those duties to an administrative expense under section 503 of the Bankruptcy Code. Further, since the debtor was apparently only a sublessee, the contractual duties were owed not to the claimants, but to the sublessor.

■ Finally, in addition to those matters pleaded in their motion, claimants request the fair rental value of the property after the debtor vacated the premises until the tanks were removed. Claimants are not entitled to recover the rental value as an administrative expense inasmuch as there is no showing that the tanks were required to be removed before the property could again be rented, i.e., that the expenses were necessary. Since the tanks were underground, presumably (there is no evidence to the contrary), they did not interfere with other use of the property. In any event, were the tanks interfering with rental of the property, there is no evidence of benefit to the estate such that an administrative priority pursuant to section 503(b)(1)(A) is appropriate.

ORDERED that the Request for Payment of Administrative Expenses filed by Lewis Lamb, William Rowe, and William Lynn on December 18, 1991, is DENIED.

IT IS SO ORDERED.